## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| SCALABLE INSIGHTS, LLC and DAVID PATTERSON, | |
| Plaintiffs, | |
| v. | Civ. Action No. 1:22-cv-00700-LY/ML |
| BIHRLE APPLIED RESEARCH INC., BAR HOLDINGS, INC. f/k/a ARDENNA, INC., ONDAS HOLDINGS INC., and AMERICAN ROBOTICS, INC., | |
| Defendants. | |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

Plaintiffs Scalable Insights, LLC and David Patterson (collectively, "Plaintiffs") allege as follows for their First Amended Complaint ("FAC") against defendants Bihrle Applied Research Inc., BAR Holdings, Inc. f/k/a Ardenna, Inc., Ondas Holdings Inc., and American Robotics, Inc. (collectively, "Defendants").

### I.
### PARTIES

1.    Plaintiff Scalable Insights, LLC (Series 3 aka Scalable Insights, a series of Pcola Kauai, LLC, (**"SIL"**)), is a series Texas limited liability company with its registered principal place of business in Austin, Texas.

2.    Plaintiff David Patterson (**"Patterson"**) is an individual, founder, manager, and owner of SIL, and has resided in Austin, Texas at all times pertinent to this action.

3.    Defendant American Robotics, Inc. (**"ARI"**) is a corporation, its President and CEO is Reese Mozer ("Mozer"), and its press releases and company webpage state that it is headquartered at 411 Waverly Oaks Road, Waltham, Massachusetts 02452. ARI's filings with

the office of the Massachusetts Secretary of State state that ARI is Delaware corporation and identify ARI's registered office and registered agent as Paracorp Incorporated, 44 School Street, Suite 505, Boston, Massachusetts 02108. ARI may be served via any of its officers, including Mozer, or its registered agent Paracorp Incorporated. ARI has committed torts in whole or in part within Texas, including against Plaintiffs, and contracts and conducts business in Texas and with Texas residents, but has not designated a Texas registered agent for service; accordingly, ARI may be served via the Texas Secretary of State. Tex. Civ. Prac. & Rem. Code § 17.044.

4.      Defendant BAR Holdings, Inc. f/k/a Ardenna, Inc. (**"Holdings"**) is a Virginia corporation with a registered office address of 81 Research Drive, Hampton, Virginia 23666. Holdings invoked this Court's jurisdiction and has already voluntarily appeared in this action. (DE 1; DE 1-2.)[1] Holdings has committed torts in whole or in part within Texas, including against Plaintiffs, conducted business in Texas and with Texas residents, including with Plaintiffs, and made actionable legal threats against Plaintiffs in Texas, including as described herein. On information and belief, Holdings was initially formed around June 2021.

5.      Defendant Bihrle Applied Research Inc. (**"BAR"**) is a Virginia corporation with a registered address of 81 Research Drive, Hampton, Virginia 23666. BAR invoked this Court's jurisdiction and has already appeared in this action. (DE 1; DE 1-2.) BAR has committed torts in whole or in part within Texas, including against Plaintiffs, contracted and conducted business in Texas and with Texas residents, including with Plaintiffs, and made actionable legal threats against Plaintiffs in Texas, including as described herein.

6.      Defendant Ondas Holdings Inc. (**"Ondas"**) is a Nevada corporation headquartered at 411 Waverly Oaks Road, Waltham, Massachusetts 02452. Ondas may be

---

[1] Referenced docket entries in the Court record are referred to herein as "DE".

served at that address via any of its officers, including its CEO Eric Brock ("Brock"), or at its principal registered address of 318 N. Carson Street, #208, Carson City, Nevada 8970 via its registered agent Paracorp Incorporated. Ondas has committed torts in whole or in part within Texas, including against Plaintiffs, and regularly contracts and conducts business in Texas and with Texas residents, but has not designated a Texas registered agent for service; accordingly, Ondas may be served via the Texas Secretary of State. Tex. Civ. Prac. & Rem. Code § 17.044.

## II.
## NATURE OF THE CASE

7.    This is an action under Texas and federal law for declaratory relief and a declaratory judgment (28 U.S.C. § 2201; Tex. Civ. Prac. & Rem. Code 37.001, et seq.), tortious interference with contract, breach of oral and written contracts and agreements (Tex. Civ. Prac. & Rem. Code § 38.001, et seq.), promissory estoppel, fraud and fraud in the inducement, constructive fraud, conversion, theft liability pursuant to the Texas Theft Liability Act and Texas Penal Code (Tex. Civ. Prac. & Rem. Code § 134.001-.005; Tex. Pen. Code § 31.03, et seq.), breach of fiduciary duty arising from an informal partnership or joint venture, money had and received, civil conspiracy, and exemplary damages (Tex. Civ. Prac. & Rem. Code § 41.008, et seq.).

8.    Plaintiffs seek monetary and non-monetary relief, including declaratory relief, injunctive relief, equitable relief, constructive trust, attachment, actual and exemplary damages, costs, attorney fees, and all such other relief awardable on or for Defendants' wrongful, malicious conduct, representations, and omissions described herein.

9.    Pleadings in the Alternative (Fed. R. Civ. P. 8(d)(2) & (3)): For avoidance of doubt, Plaintiffs state that the claims and allegations herein are pled in the alternative to the

extent of any inconsistency.

10.     All asserted claims arise from a common nucleus of operative facts.

### III.
### JURISDICTION & VENUE

11.     This Court has subject matter jurisdiction over this civil action under 28 U.S.C. §
1332 (diversity jurisdiction) because the matters in controversy exceed the sum or value of
$75,000, exclusive of interest and costs, and are between citizens of different states.

12.     This Court also has subject matter jurisdiction over this civil action under 28
U.S.C. § 1331 (federal question) because it makes federal claims under the Declaratory
Judgment Act, 28 U.S.C. § 2201, that arise in substantial part under the Defend Trade Secrets
Act, 18 U.S.C. § 1836, et seq. A justiciable controversy subject to declaratory relief exists
between Plaintiffs and defendants BAR and Holdings due, in part, to disputed written threats and
demands made against Plaintiffs by legal representatives for BAR and Holdings in a February
18, 2022 letter ("Cease-and-Desist Letter") addressed to SIL and Patterson at "7813 Texas Plume
Road, Austin Texas 78759" which alleged that Plaintiffs were barred from communicating about
BAR or Holdings or with Ondas and ARI and were under and had violated confidentiality
restrictions by providing two documents to Ondas and ARI. The letter's threatening assertions
were and are baseless, false, and harmful to Plaintiffs.

13.     This Court has personal jurisdiction over the Defendants because, among other
things, they transact business or have purposefully availed themselves of the privilege of doing
business in Texas and this District, including with Plaintiffs; because the claims arise out of
Defendants' conduct in and effecting Texas, this District, and their residents; because Defendants
committed and are continuing to commit tortious and other illegal acts in and having an effect in

the state of Texas and this District, including against Plaintiffs; and because the exercise of jurisdiction is reasonable.

14.    Defendants are each amenable to service of process as allowed by law and under the Texas long-arm statute, Tex. Civ. P. & Rem. Code §§ 17.041-.045; Tex. R. Civ. P. 120a, and have sufficient contacts with Texas so that requiring their appearance here does not violate due process.

15.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) & (3), (c) & (d).

16.    Moreover, BAR is contractually prohibited from contesting jurisdiction or venue in this Court. BAR was party to a renewable one-year written contract dated December 18, 2020 with SIL and Patterson (DE 12-1 at Ex. 1, "Contract"). In the Contract, BAR acknowledged that SIL and Patterson are located in this District at "7813 Texas Plume Road, Austin Texas 78759" and "ha[d] provided certain consulting services to BAR prior to the Effective Date [of the Contract] pursuant to an oral arrangement." Contract at 1 (recitals clauses). The Contract provided that:

> "in the event of an actual or threatened breach of th[e] Agreement, the affected party shall be entitled to seek injunctive or other equitable or provisional relief *in **any** court of competent jurisdiction*[.]"

DE 12-1 at 9 (emphasis added). The claims herein in this FAC seek injunctive, equitable, and provisional relief, including for BAR's breaches of the Contract, and this Court is a court of competent jurisdiction for such claims and relief. BAR purported to non-renew the Contract via a 90-day written nonrenewal letter dated September 15, 2021 and addressed and delivered to Plaintiffs at "7813 Texas Plume Road, Austin Texas 78759" via FedEx ("Nonrenewal Letter"), such that the Contract would thereafter not renew and would expire and conclude on or about

December 18, 2021. *See* Contract at 2 (term and termination). The Contract and Nonrenewal

Letter are both signed by BAR's then-president John ("Jack") N. Ralston ("Ralston").

**IV.**
**CONDITIONS PRECEDENT**

17.    All conditions precedent to bringing this suit and the claims and relief sought

herein have been materially performed or have occurred.

**V.**
**BACKGROUND**

**A. Additional Information on the Parties**

18.    Plaintiff SIL is a series Texas limited liability company that Patterson owns and

founded in 2016, which in tandem with Patterson provides consulting and other services.

19.    Plaintiff Patterson is an officer-level thirty-year veteran of the high-tech industry.

Over that period Patterson has developed a background and specialized experience in software

engineering, product development, business development, marketing, sales, corporate and

business strategy, leveraging developed technology, and business turn-arounds and divestitures.

20.    Patterson has worked in various segments of the high-tech industry in a variety of

capacities and with businesses that range from small start-ups to Fortune 500 companies.

21.    Patterson attends and routinely speaks at seminars, conferences, and presentations

on topics related to business in the high-tech industry, many of which between 2018 and 2022 he

attended in Texas and elsewhere as BAR's business representative and the face of its herein

described Ardenna Unit business.

22.    Patterson holds a Master's Degree in Physics and Batchelor's Degrees in Physics

and Mathematics from the University of Missouri-Columbia, where his Master's thesis topic was

Advanced Signal and Image Processing using Wavelets. Patterson is also a published author and

articles that he has authored or co-authored have appeared in technical journals.

23.    Since 2016, Patterson has also served as a volunteer advisory board member for VetCV, a social services organization that provides Veterans with a secure, safe, online "vault" to store and share important documents such as medical history, photos, and personal information.

24.    BAR is an aerospace technology company. BAR developed and for a time owned certain computer vision and automated infrastructure inspection technology, which was outside of and not a high-level priority for BAR's core aerospace business. With Plaintiffs' substantial assistance, work, and advice from 2017 to 2022—the substantial majority of which Plaintiffs provided from Plaintiffs' location in Austin, Texas—that technology was developed into a distinct business segment within BAR that operated under the business name "Ardenna" (herein, the "Ardenna Unit").

25.    Holdings is a shell corporation created and formed by BAR around June 2021.

26.    Ondas is a public company. ARI is an Ondas subsidiary with business in the field of robotics, including drone inspection technology. As a result of an acquisition negotiated exclusively in 2022 and that closed in April 2022 (the "Acquisition"), Ondas and ARI acquired and have since been using the assets formerly associated with the Ardenna Unit.

**B. BAR Retains the Texas Plaintiffs in 2017 to Develop the Ardenna Unit and Participates in and has Plaintiffs Participate in Texas Business Activities for the Ardenna Unit**

27.    Prior to the events that precipitated this action, Patterson had developed a particular familiarity with and proficiency regarding technologies and processes to employ artificial intelligence and internet-of-things ("IoT") for the processing of inspections and monitoring of critical infrastructure assets, and regarding business development and growth

opportunities in that field. As a result, around 2017 Patterson became aware of business that BAR was conducting—rather unsuccessfully at the time —in that field related to BAR's technology offerings.

28.    In May 2017 in Dallas, Texas, Patterson met with BAR personnel regarding BAR's computer vision and automated infrastructure inspection technology business and prospects and ideas for development of that then-languishing segment of BAR's business.

29.    Following that meeting, BAR indicated that it wished to work with Patterson on development of that business and in 2017 engaged Patterson and, in tandem, SIL to do so. The agreed goal between them was the development of that segment as its own distinct business with the objective of positioning the business for an eventual financing, spin-out, or sale to a third party, with the understanding that Plaintiffs would receive a percentage of any divestiture, spin-out, or financing of the business.

30.    Working in conjunction, Plaintiffs and BAR personnel selected the name "Ardenna" for BAR's computer vision and automated infrastructure inspection technology business segment and, around late 2017, began development and promotion of the Ardenna Unit and its technology solutions under the "Ardenna" business name. Around that time, Plaintiffs also began to identify and contact prospective Ardenna Unit customers and partners and develop and refine the Ardenna Unit's strategic plans.

31.    BAR formally announced the Ardenna Unit and Patterson's role therein to the public in an April 24, 2018 press release entitled *Bihrle Applied Research Inc. announces Ardenna, a New Venture Focused on Computer Vision and Machine Learning Solutions for Infrastructure Inspections*, which BAR has also posted to its website at https://bihrle.com/wp-content/uploads/2020/01/Bihrle-Announces-Ardenna-April2018.pdf. The press release listed

8

Patterson as the only contact for Ardenna and publicly identified "David Patterson [as] Business Lead for Ardenna."

32.    Plaintiffs were not simply consultants for BAR in relation to the Ardenna Unit. From late 2017 to February 2022, Patterson (and thereby SIL) performed services and worked roughly full time from Austin, Texas for BAR's Ardenna Unit. During that time, Patterson managed operations of, developed the business of, prepared marketing and business plans and materials for, managed and directed the personnel of, met with and secured customers and strategic partners for, communicated with Ardenna Unit and BAR legal counsel Craig Mytelka regarding customer business deals for, identified and facilitated discussions with potential acquirors for, spoke at conferences and presentations on behalf of, and was the public face of the Ardenna Unit. Throughout that time, Patterson also reported to and worked closely with Ralston, BAR's president and substantial shareholder, who was supportive and appreciative of Patterson's efforts.

33.    Each year of the engagement, BAR issued and sent a 1099 form to Plaintiffs at their 7813 Texas Plume Road, Austin, Texas address. BAR also issued agreed-upon monthly payments and semi-regular expense reimbursements to Plaintiffs.

34.    BAR did not provide Patterson with an office or with a mobile phone. The vast majority of work that Plaintiffs performed for the Ardenna Unit from 2017 to 2022 originated and was performed from Plaintiffs' location in Austin, Texas. Similarly, the vast majority of communications that Plaintiffs engaged in for, on behalf of, or in connection with the Ardenna Unit (including with BAR personnel, prospective customers, and prospective acquirors, including Ondas and ARI) were also conducted from Plaintiffs' location in Austin, Texas. To a substantial extent, BAR's Ardenna Unit was operated from and out of Plaintiffs' 7813 Texas

Plume Road, Austin, Texas address, with Patterson serving as the de facto business manager for the Ardenna Unit from that location. Operationally, the Ardenna Unit was primarily run and managed out of Austin, Texas for those four-plus years.

35.    BAR did approve and provide Patterson with multiple sets of Ardenna Unit business cards to use and hand out, which it shipped or had shipped to Patterson in Austin at least three different times. The business cards were approved by BAR personnel Leah Threlkeld and Brian Wachter, a BAR executive. A copy of one such business card identifying Patterson as Ardenna's Director of Business Development is show immediately below in Figure 1.

Fig. 1. Patterson Ardenna business card.



The mobile phone device number listed in the business card is Patterson's, not BAR's, and during the period of Plaintiffs' engagement with the Ardenna Unit the monthly bills for that device were associated with Plaintiffs' Austin, Texas address.

36.    The Ardenna Unit also publicly identified "David Patterson [as] Ardenna's Director of Business Development" in a PRNewswire press release dated May 1, 2019 and entitled *360 Rail Selects Ardenna's Rail Defect Detection SaaS to Fuel New Drone-based*

*Industrial Rail Yard Inspection Services*. The press release is available and posted at https://www.prnewswire.com/news-releases/360-rail-selects-ardennas-rail-defect-detection-saas-to-fuel-new-drone-based-industrial-rail-yard-inspection-services-300842047.html.

37.    The Ardenna Unit engaged in additional significant business activities in Texas related to and for the benefit of the Ardenna Unit and BAR, which were facilitated as a direct result of Plaintffs' services and work efforts. The following paragraphs describe a few such examples.

38.    As a result of meetings and discussions that occurred in Austin, Texas and were arranged and facilitated by Patterson, the Ardenna Unit entered into a collaborative business relationship with Austin-based company HUVRdata. The collaboration between the Ardenna Unit and "Austin-based HUVRdata" was publicly announced in an April 26, 2018, Prnewswire.com press release entitled *Ardenna and HUVRdata Announce Collaboration to Bring AI-Based Defect Detection Automation to Enterprise Industrial Asset Management Solution* , which is available and posted at https://www.prnewswire.com/news-releases/ardenna-and-huvrdata-announce-collaboration-to-bring-ai-based-defect-detection-automation-to-enterprise-industrial-asset-management-solution-300637610.html. Meetings with HUVRdata regarding that relationship include a breakfast meeting in Austin at the Kirby Lane Café on William Cannon Drive attended in person by HUVRdata personnel and Patterson and BAR president Ralston on behalf of the Ardenna Unit. Patterson also participated in multiple Austin meetings with HUVRdata.

39.    On or about January 5, 2019, representatives from HUVRdata and the Ardenna Unit also participated in an on-site meeting with and joint pitch to BP at BP's offices in Houston, Texas. Patterson travelled from Austin to Houston to participate in that pitch for the Ardenna

Unit.

40.     On behalf of the Ardenna Unit and BAR, Patterson travelled from Austin to Houston for and attended the 2018 and the 2019 Energy Drone Summit in Houston, Texas. The Ardenna Unit shared a booth with HUVRdata for the 2018 summit, which was also attended by Bar executive Brian Wachter and Stanton Coffey, an engineer that BAR assigned to the Ardenna Unit. Patterson was also a speaker at the 2019 summit in one of its afternoon sessions. The 2019 summit was also again attended by Stanton Coffey.

41.     The Ardenna Unit also worked in Texas with rail provider BNSF and Visual Intelligence, a Houston-based company. In August 2019, BAR executive Brian Wachter and Patterson met with BNSF personnel in Dallas, Texas to negotiate licensing related to the Ardenna Unit. Patterson travelled from Austin to Dallas for that meeting.. In September 2020, the Ardenna Unit and Visual Intelligence conducted a test flight demonstration of their technology solutions for BNSF at BNSF's Dayton railyard near Houston. BAR executive Brian Wachter attended the demonstration, as did Patterson, who travelled from Austin for it. Patterson arranged and coordinated the demonstration with the participants from Plaintiffs' Austin, Texas location.

42.     As a result, for four-plus years BAR had substantial business operations in Texas and purposefully availed itself of the privilege of doing business in Texas via and in connection with its Ardenna Unit, as well as with Plaintiffs.

43.     Over this period, Plaintiffs were the driving force behind the Ardenna Unit's development of its business and, in 2022, the attainment of the goal of a sale of the Ardenna Unit assets to a third party, Ondas and ARI. Were it not for Patterson and his substantial efforts, the Acquisition by Ondas and ARI would not have occurred.

12

### C. BAR's Services Arrangements with Plaintiffs and the One-Year Contract

44.     Over this period, Plaintiffs and BAR had three separate arrangements regarding the work and services Plaintiffs were providing in connection with the Ardenna Unit.

45.     From 2017 to December 17, 2020, with the exception of a since-expired written nondisclosure agreement, BAR and the Plaintiffs worked together under an informal oral arrangement, which included BAR paying Plaintiffs an agreed-upon monthly amount and reimbursing expenses and under the representation that Plaintiffs would receive a percentage of any divesture of the Ardenna Unit.

46.      From December 18, 2020 to December 18, 2021, BAR and the Plaintiffs worked together under the Contract (DE 12-1 at Ex. 1). BAR purported to non-renew the Contract via its Nonrenewal Letter dated September 15, 2021, such that the Contract thereafter would not renew and would expire and conclude on or about December 18, 2021. *See* Contract at 2 (term and termination). The Contract provided that BAR pay Plaintiffs agreed-upon monthly amounts, expense reimbursements, and a "Transaction Fee" (which Bar could elect to pay in cash or partially "in kind") in the event of a defined "Transaction" involving the Ardenna Unit or its assets that was consummated during or within six (6) months of the expiration of the Contract. *See* Contract at 1-3. The Transaction Fee was due no later than the closing of any such Transaction. *Id.*, at 3.

47.     Following BAR's nonrenewal of the Contract, from December 19, 2021 until Plaintiffs' working relationship with BAR concluded around late February 2022, BAR and the Plaintiffs again worked together under an informal oral arrangement.

### D. Plaintiffs Initiate and Facilitate the Acquisition from Austin

48.     In early 2022, Patterson first identified Ondas and ARI as a potential buyer for the

Ardenna Unit or its assets. From his Austin location, Patterson contacted Wayne Tatro ("Tatro"), a business consultant operating out of Seattle and Denver who worked with Ondas and ARI, via LinkedIn on or about January 8, 2022, about gauging Ondas and ARI's interest in discussions about a potential transaction. Tatro responded that there might be interest.

49.    Because BAR was going through a management restructuring at the time and had nonrenewed the Contract, Patterson sought reassurances from BAR before proceeding with discussions and concentrating further efforts toward tasks related to that opportunity that BAR intended to satisfy its prior representations that Plaintiffs' would be receiving a percentage if a transaction was obtained with Ondas and/or ARI. On or about January 11, 2022, Patterson spoke from Austin with Ralston, the person to whom he reported at BAR, indicated that he would not initiate a dialogue with Ondas and ARI or continue working with BAR on the Ardenna Unit if Plaintiffs were not going to be compensated with the percentage interest, and asked Ralston, "Should I proceed or not."  Ralston said yes, move forward. Plaintiffs relied on this representation, which also constituted a contractual promise, to perform additional services. BAR, on information and belief, did not intend to honor those representations.

50.    As a result of and in reliance on such additional assurances by BAR's Ralston, who on information and belief was also an executive or officer of Holdings, Patterson and SIL followed up with Tatro and continued to provide services and expend additional work on the prospective transaction and toward making contact and initiating and facilitating a dialogue with Brock (Ondas' CEO) and Mozer (ARI's founder and president), which included Patterson's preparation of various materials for their review regarding the Ardenna Unit and its business.

51.    Patterson's efforts succeeded, and beginning in the second week of January 2022, Brock and Mozer began communicating with Patterson regarding their interest in the Ardenna

14

Unit and acquiring it. From Plaintiffs' location in Austin, Patterson conducted teleconferences and engaged in email discussions in January and into early February 2022 with Mozer, Brock, and others, including Ralston, aimed at obtaining a transaction for the Ardenna Unit. During this time, no one with BAR or Holdings indicated to Patterson that Plaintiffs would not receive a percentage in any transaction that transpired.

52.    Plaintiffs informal working and services relationship with BAR during this time, which was oriented at securing a transaction with Ondas and/or ARI and involved a split between them of the proceeds of a successful transaction, constituted an informal joint venture or partnership. As such, BAR owed fiduciary duties to Plaintiffs.

### D. The Acquisition is Signed and Closes, but Defendants Collaborate to Not Provide Plaintiffs the Stock and Money They are Entitled to on the Acquisition

53.    As a result of Plaintiffs' efforts and negotiations, Ondas and ARI made an offer for the Ardenna Unit business, which they initially conveyed to Patterson in a phone call and which on information and belief tracked the key business terms of the Acquisition once it closed. Patterson directed Ondas and ARI to direct their offer to BAR's executives.

54.    BAR and Holdings were aware that the received offer and proposed transaction with Ondas and ARI, if consummated, would also trigger the Contract's Transaction Fee. They also discussed the Contract's Transaction Fee with Ondas and ARI. Around this time they also began excluding Patterson from discussions and communications regarding the proposed Acquisition transaction despite Plaintiffs' role in the Ardenna Unit and almost sole responsibility for obtaining the Acquisition offer. Patterson was not advised of the structure of the transaction, other than that it would be an asset purchase and that Ondas and ARI would be paying consideration 780,000 shares of Ondas stock (ticker: ONDS) and $900,000 cash. BAR indicated

to Patterson that BAR would be electing to pay Patterson "in kind," with $50,000 paid in cash and the remainder in shares of Ondas stock.

55.    In an effort to facilitate the Acquisition and streamline closing, on February 17, 2022, Patterson circulated and conveyed via email to BAR, Ondas (via Brock), and ARI (via Mozer) a copy of the Contract along with a proposed novation agreement that proposed to substitute the Contract's Transaction Fee with a flat fee. As a result, all Defendants were specifically aware of the Contract and its terms, including consideration payable thereunder to Plaintiffs.

56.    In response, BAR and Holdings sent Plaintiffs the disheartening and false Cease-and-Desist Letter dated February 18, 2022, as described above in paragraph 12. Plaintiffs disputed (and continue to dispute) the Cease-and-Desist Letter's above described allegations, which are false, harmful, and allege improper disclosure of confidential information, and demanded a retraction. BAR and Holdings have not retracted their false contentions. BAR and Holdings' disputed contentions and threats made and directed to Plaintiffs at their Austin address constitute a justiciable controversy invoking the threat and prospect of claims by BAR or Holdings under the Defend Trade Secrets Act, 18 U.S.C. § 1836, et seq., and give rise to a right for Plaintiffs to seek and be entitled to declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201 and provisions of Texas law, Tex. Civ. Prac. & Rem. Code 37.001, et seq.

57.    Plaintiffs nevertheless continued to provide efforts to help ensure that the Acquisition transaction close, including by at BAR and Holding's request providing additional insights on the Ardenna Unit's business to Mozer. But BAR and Holdings ceased providing any other updates to Plaintiffs regarding the status of the proposed Acquisition.

58.    On March 21, 2022, Ondas announced via press release that it and ARI had

"entered into a definitive agreement to acquire Ardenna."  On April 6, 2022, Ondas announced via press release that it "had completed the previously announced acquisition of the Ardenna assets." At no time between these dates did a representative of BAR or Holdings contact Plaintiffs concerning the Acquisition, any elections under the Contract, or the Transaction Fee that was payable to Plaintiffs at closing. In fact, they did not communicate at all with Plaintiffs about the Acquisition until mid April. BAR and Holdings have also refused to provide Plaintiffs a copy of the Asset Purchase Agreement with Ondas and ARI or documents underlying any purported transaction expenses, as necessary to evaluate the correct Trasaction Fee.amount.

59.    The closed Acquisition qualifies as a Transaction under the Contract and invokes the Transaction Fee.

60.    BAR and Holdings have provided calculations to Plaintiffs in which they acknowledge that Plaintiffs are due no less than 23,695 shares of Ondas Holdings, Inc. stock (the "Shares") and cash in the amount of $50,000 (USD). Plaintiffs contend that the proper amount is substantially higher in view of the Acquisition consideration and improper expense deductions by BAR.  BAR has nevertheless withheld the undisputed amount in an improper effort to force Plaintiffs to accede to the lower amount and execute a settlement agreement with additional terms not contemplated by the Contract.

61.    To date Bar has not paid or tendered anything to Plaintiffs in connection with the Acquisition, despite (a) BAR's above 2022 representations by Ralston that it would do so; and (b) its obligations in the Contract.

62.    Accordingly, BAR has breached the written Contract, the above oral promises, and its fiduciary duties to Plaintiffs and committed fraud against Plaintiffs. Holdings conspired and aided and abetted in those breaches.

63.     At some point, BAR on information and belief moved the Ardenna Unit assets to Holdings without compensating Plaintiffs and directed the consideration received under the Acquisition to Holdings, which alternatively constitutes additional breaches of the Contract and constructive fraud.

64.     Additionally, Ondas, ARI, BAR, and Holdings collaborated to knowingly structure the Acquisition in such a way as to make it not possible to pay Plaintiffs the elected in-kind Contract Transaction Fee at closing, including by imposition of a Restriction Rights and Lock-up Agreement. Ondas and ARI's conduct and action in this regard therefore constitutes tortious interference with the Contract. Holdings aided and abetted that tortious interference.

65.     Ondas Holdings, Inc. is a small-cap company whose stock is traded on the NASDAQ public exchange (ticker symbol: ONDS). The market value of its stock fluctuates daily and has varied since the Acquisition.

66.     Plaintiffs are the rightful legal owners of and since April 6, 2022 have had a present-interest right to immediate possession of identifiable property (the "Property") consisting of no less than 23,695 shares of Ondas Holdings, Inc. stock  (the "Shares") and cash in the amount of $50,000 (USD). The Shares are of changing or fluctuating value.

67.     The Property is presently in the custody and control of defendants BAR or Holdings – who are using and leveraging it for their own benefit – despite their express knowledge and awareness that the Property is rightfully the Plaintiffs.

68.     BAR and Holdings obtained and have wrongfully exercised dominion and control over the Property to the exclusion of and inconsistent with Plaintiffs' rights to possession, free use, and enjoyment of the Property, including by failing and refusing to promptly tender the Property to Plaintiffs and having the Shares (mis)titled in their own name. Defendants

coordinated with, materially assisted, and aided and abetted one another in these actions with and collaborated with Ondas. and ARI. with regard to mistitling the Shares.

69.     Plaintiffs demanded in writing that BAR and Holdings tender and deliver the Property to Plaintiffs, but Defendants refused and continue to knowingly wrongfully retain and withhold the Property from Plaintiffs. Plaintiffs' written demand was made more than thirty days before the filing of this action.

70.     BAR and Holdings' actions and omissions in regard to Plaintiffs and the Property were committed with malice as they held a specific intent to cause substantial injury or harm to the Plaintiffs, including by depriving Plaintiffs of the Property, which is of substantial value, and leveraging the Property against Plaintiffs to their detriment.

71.     The appropriation of the Property is ongoing, was and is without Plaintiffs' effective consent, is unlawful, and under Tex. Pen. Code § 31.03, et seq., constitutes felony theft of not less than the third degree since the Property's value exceeds $30,000.

## V.
## COUNT 1: DECLARATORY JUDGMENT

72.     Plaintiffs restate and incorporate as if alleged herein the preceding paragraphs.

73.     A justiciable controversy exists between the parties under which Plaintiffs are entitled to declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201 (in relation to theDefend Trade Secrets Act, 18 U.S.C. § 1836, et seq.), and Texas declaratory judgment statutes, Tex. Civ. Prac. & Rem. Code § 37.001, et seq,, against Defendants regarding: (a) the allegations of the Cease-and-Desist Letter; (b) the amount of the Transaction Fee; and (b) the proper titling, ownership, and  possession of the Transaction Fee and any Shares or Property thereunder.

74.     Plaintiffs are also entitled to recover their costs and reasonable attorneys' fees under Tex. Civ. Prac. & Rem. Code § 37.001, et seq,.

**VI.**
**COUNTS 2 & 3: CONTRACTUAL BREACHES & PROMISSORY ESTOPPEL**

75.     Plaintiffs restate and incorporate as if alleged herein the preceding paragraphs.

76.     Defendant BAR's above-alleged acts harmed Plaintiffs and constitute breaches of the Contract (as to the Transaction Fee, particularly) and of the above-described 2022 oral contractual representations and promises to Plaintiffs regarding a percentage for them of the Acquisition.

77.     Plaintiffs performed services in reliance on BAR's oral promises and representations and with the expectation and understanding of payment; therefore, they are also entitled to recover against BAR on the described oral promises and representations under the doctrine of promissory estoppel.

78.     The Shares, Property, and equity payable as the Transaction Fee under the Contract as a result of BAR's "in kind" election is unique and of speculative, varying value.

79.     Plaintiffs are entitled to remedies and recoveries for BAR's breaches, including damages, specific performance, injunctive relief, and equitable relief, including attachment and a constructive trust.

80.     Plaintiffs made written demand on BAR to comply with the Contract and its promises to Plaintiffs, but it did not. Written demand was made more than thirty (30) days before the filing of this suit. Accordingly, Plaintiffs are also entitled to recover costs and reasonable attorneys' fees under Tex. Civ. Prac. & Rem. Code § 38.001, et seq.

## VII.
## <u>COUNT 4: TORTIOUS INTERFERENCE WITH CONTRACT</u>

81.    Plaintiffs restate and incorporate as if alleged herein the preceding paragraphs.

82.    On or before February 18, 2022, defendants Ondas and ARI had received, had specific actual knowledge and awareness of, and had discussions regarding the Contract between Plaintiffs and  BAR, including its Transaction Fee clause and the obligations thereunder. Holdings was also quite familiar with the Contract as of that date.

83.    Ondas, ARI, and Holdings nevertheless intentionally structured the Acquisition and the related transactions and agreements thereunder in a manner that wrongfully interfered with the Contract and the delivery and payment of the Transaction Fee, including by (a) imposing a 6-month restriction rights and lock-up agreement on the shares of Ondas stock exchanged as consideration under the Acquisition, thereby preventing, precluding, or impinging the delivery and payment of any portion of those share to Plaintiffs on closing of the Acquisition; (b) diverting the consideration paid in the Acquisition for the Ardenna Unit assets to Holdings instead of BAR; and/or (c) diverting the Ardenna Unit assets to Holdings at some point prior to the Acquisition's close.

84.    Ondas and ARI have thereby tortuously interfered with the Contract, and with Plaintiffs' rights thereunder. Plaintiffs were damaged and suffered substantial harm as a result.

85.    Since the closing, ARI and Ondas have made use of and unjustly benefited from the former Ardenna Unit assets and associated technology they obtained as a result of the Acquisition.

86.    Holdings participated in, facilitated, assisted with, and had a meeting of the minds with Ondas and ARI regarding the wrongful interfering structuring of the Acquisition, as

evidenced in part by Holdings' approval and execution of the Acquisition transaction documents and its 6-month restriction rights and lock-up agreement. Holdings therefore aided and abetted and/or conspired in Ondas and ARI's tortuous interference(s) with the Contract, and is jointly liable thereon.

87.     Alternatively, Holdings directly and for its own benefit wrongfully interfered with the Contract and the delivery and payment of the Transaction Fee by (a) diverting the Ardenna Unit assets to Holdings at some point prior to the Acquisition's close (but without commensurate payment to BAR of fair value thereon); and/or (b) directing and diverting the consideration paid in the Acquisition for the Ardenna Unit assets to Holdings instead of BAR. Holdings directly benefitted from these acts as Holdings obtained and has had the benefit of the consideration paid under the Acquisition, yet has avoided paying Plaintiffs any of the Contract's Transaction Fee.

88.     Plaintiffs are entitled to damages and other recoveries and relief from and against Ondas, ARI, and Holdings for the above aforementioned tortious interference(s).

89.     Ondas, ARI, and Holdings proceeded with their aforementioned tortious acts with actual awareness of the risk of substantial harm to Plaintiffs (indeed, they all had the Contract), but nonetheless proceeded to tortiously interfere with the Contract with conscious indifference to the rights of and extreme risk of harm to Plaintiffs. Holdings also had specific intent to cause substantial harm or injury to Plaintiffs via these acts and, alternatively and on information and belief and as indicated by the Acquisition structure, Ondas and ARI did too. The harm suffered by Plaintiffs therefore resulted from malice and/or gross negligence on the part of Ondas, ARI, and Holdings.

90.     Accordingly, Plaintiffs also seek and are entitled to recover and be awarded exemplary damages under Tex. Civ. Prac. & Rem. Code § 41.008, et seq., on the aforementioned

tortious interference(s).

**VIII.**
**COUNT 5: BREACH OF FIDUCIARY DUTIES**

91.     Plaintiffs restate and incorporate as if alleged herein the preceding paragraphs.

92.     Beginning in January 2022, Plaintiffs, in and from Austin and in reliance on Ralston's representations and promises, and BAR jointly participated in a venture directed at securing Ondas and/or ARI's acquisition of the Ardenna Unit, which BAR and Plaintiffs agreed they would share in the benefits and proceeds of if successful.

93.     The venture constituted an informal joint venture or partnership between BAR and Plaintiffs. BAR therefore had fiduciary obligations and owed fiduciary duties to Plaintiffs in relation to the venture.

94.     The venture was very successful, culminating in the Acquisition and exchange of the Acquisition consideration, which included at least $900,000 cash and 780,000 shares of Ondas stock. On the date of the Acquisition's closing and transfer of the shares, which was either April 5 or April 6, 2022, the market value of the cash and shares was $6,890,400.

95.     Were it not for Plaintiffs' services, efforts, and negotiations in January and into February 2022, the parties would not have met or initiated and conducted discussions and the Acquisition would not have occurred.

96.     BAR breached its fiduciary duties owed to Plaintiffs (including duties of disclosure, good faith and fair dealing, and trust and confidence), as it did not protect Plaintiffs interests in connection with the venture nor was it forthcoming to Plaintiffs in regard to information concerning the Acquisition. Rather, it participated in and facilitated routing the Ardenna Unit's assets and the Acquisition consideration—including the portion allocable or

23

payable to Plaintiffs—away from BAR and to Holdings. Also, for example, BAR has to date not provided a requested copy of the Acquisition's non-public asset purchase agreement ("APA"), attachments, schedules, or addenda to Plaintiffs, nor copies of documents to substantiate BAR's claimed transaction expenses, nor information on how exactly Holdings ended up with Plaintiffs' (or BAR's) stake from the Acquisition.

97.      For its own substantial benefit and to Plaintiffs' detriment, Holdings assisted in, facilitated, aided and abetted, and conspired in these fiduciary breaches and is jointly liable on them. A transfer agent statement of account issued to Holdings, shown in Figure 2 below, shows that 780,000 shares of Ondas stock exchanged in the Acquisition and identified as Certificate Number BE 452  were issued on April 5, 2022 directly to Holdings (not to BAR, nor any portion thereof to Plaintiffs).

Fig. 2. Transfer Account Statement re Exchanged Acquisition Stock.



98.      Holdings, which leading up to the Acquisition was little more than a shell corporation, as a result of these fiduciary breaches improperly and inequitably gained and was

unjustly enriched by approximately $7M in value.

99.     These 780,000 shares—including the portions that are properly Plaintiffs—are currently under and subject to the aforementioned 6-month restriction rights and lock-up agreement, which expires October 2, 2022.

100.    There is a substantial risk that Holdings, either upon or soon after expiration of the lock-up restrictions and during the pendency of this action, will sell, transfer, or otherwise dispose of or encumber the shares, thereby frustrating (and/or significantly complicating) Plaintiffs' right and this Court's ability to subject the shares or portions thereof to attachment and sequestration in the registry of the Court or other equitable or injunctive remedies.

101.    As shown by the stock chart in Figure 3, below, the shares are worth millions of dollars and fluctuate in value constantly, thus placing Plaintiffs' valuable interests at extreme risk from market fluctuations and Holdings' management of the shares and stock position.

Fig. 3. Google 6-month Stock Chart re Ondas stock.



Google 6-month Stock Chart on Ondas Holdings, Inc. (Aug. 29, 2022 screenshot) (available at https://www.google.com/search?client=safari&rls=en&q=onds+chart&ie=UTF-8&oe=UTF-8);

102.    Plaintiffs are entitled to damages and other recoveries and relief, including

25

equitable, from and against BAR and Holdings for the aforementioned fiduciary breaches, including disgorgement and award of the value and benefits inequitably and unjustly obtained by Holdings or BAR.

103.    BAR and Holdings engaged in these omissions and conduct with actual awareness of the risk of substantial harm to Plaintiffs, but nonetheless proceeded anyway with conscious indifference to the rights of and extreme risk of harm to Plaintiffs. BAR and Holdings also had specific intent to cause substantial harm or injury to Plaintiffs via these acts and omissions as indicated by the Acquisition structure, the routing of Acquisition consideration and Ardenna Unit assets, and the concealment of Acquisition transaction documents from Plaintiffs.. The harm suffered by Plaintiffs on the fiduciary breaches therefore resulted from malice and/or gross negligence on the part of BAR and Holdings.

104.    Accordingly, Plaintiffs also seek and are entitled to recover and be awarded exemplary damages under Tex. Civ. Prac. & Rem. Code § 41.008, et seq., on the aforementioned tortious interference(s).

## IX.
## COUNT 6: CONSTRUCTIVE FRAUD

105.    Plaintiffs restate and incorporate as if alleged herein the preceding paragraphs.

106.    During the one-year term of the Contract and for six months thereafter, the Ardenna Unit assets were impressed with an obligation: i.e., that the Plaintiffs be paid the Transaction Fee in the event of a qualifying Transaction for or involving the assets of the Ardenna Unit. Plaintiffs specifically relied on that obligation in connection with the services they performed for BAR and the Ardenna Unit.

107.    BAR and Holdings were each well aware that the Ardenna Unit assets were

impressed with that obligation. Yet, without payment of the Transaction Fee, they (a) at some point prior to the Acquisition's close (but without commensurate payment to BAR of fair value) diverted the Ardenna Unit assets to Holdings; and (b) directed and diverted to Holdings instead of BAR the consideration paid in the Acquisition for the Ardenna Unit assets.

108.    Subsequent to the Acquisition's close, Defendants have issued press releases and filed documents with the SEC stating that the Acquisition's consideration was paid to Holdings, not BAR.

109.    In connection with the Ardenna Unit assets, BAR had legal (i.e., promissory and contractual) and equitable (i.e., fiduciary) duties to Plaintiffs which, as described above, it did not adhere to and breached via its above-identified actions that ultimately resulted in Holdings receiving the Acquisition consideration rather than BAR. BAR's actions in regard to the Ardenna Unit assets were deceptive, were harmful to Plaintiffs' rights and economic interests relating to transaction involving the Ardenna Unit assets, and were injurious to Plaintiffs' and the public's interests in fair dealing.

110.    BAR's identified actions and omissions constitute constructive fraud.

111.    Plaintiffs are entitled to damages and other recoveries and relief (including equitable remedies of attachment, tracing, accounting, disgorgement, and constructive trusts over the former Ardenna Unit assets) from and against BAR for constructive fraud and from those other parties that unjustly or knowingly benefited as a result of BAR's constructive fraud.

112.    BAR engaged in its constructively fraudulent acts and omissions with actual awareness of the risk of substantial harm to Plaintiffs, but nonetheless proceeded anyway with conscious indifference to the rights of and extreme risk of harm to Plaintiffs. BAR also had specific intent to cause substantial harm or injury to Plaintiffs via these acts and omissions as

indicated by the Acquisition structure, the routing of Acquisition consideration and Ardenna Unit assets to Holdings in circumvention of Plaintiffs' prior rights, and the concealment of Acquisition transaction documents from Plaintiffs... The harm suffered by Plaintiffs from the constructive fraud therefore resulted from malice and/or gross negligence on the part of BAR.

113.    Accordingly, Plaintiffs also seek and are entitled to recover and be awarded exemplary damages under Tex. Civ. Prac. & Rem. Code § 41.008, et seq., on the aforementioned constructive fraud.

## X.
## COUNTS 7 & 8: FRAUD & FRAUD IN THE INDUCEMENT

114.    Plaintiffs restate and incorporate as if alleged herein the preceding paragraphs.

115.    At the time of Ralston's above-discussed January 2022 conference with Plaintiffs (i.e., that they should move forward on exploring a transaction with Ondas and/or Holdings), BAR, on information and belief, did not have an intent to properly pay a full and accurate Transaction Fee to Plaintiffs.

116.    In hindsight, inferences of BAR's non or improper payment intent at the time abound, including the absence of the specified fee in proposed substitute agreements drafted by BAR or its agents.

117.    BAR's non or improper payment intent was material and was not disclosed to the Plaintiffs, who would have altered course had this information been revealed.

118.    Moreover, when Patterson stated to Ralston during the above-discussed January 2022 conference that Plaintiffs would only proceed with initiating a dialogue and facilitating a transaction with Ondas and/or ARI under the understanding that Plaintiffs' would be receiving a percentage of the proceeds if a deal was reached, Ralston said they should proceed (an implicit,

if not overt, representation that they would be paid) and did not disclose that BAR lacked an intent to correctly pay Plaintiffs.

119.    Acting in reliance on Ralston and BAR's material omissions and Ralston's implicit assurance of payment, Plaintiffs did as Ralston indicated they ought to have; they proceeded, provided introductions between the parties, provided additional services and work, and ultimately facilitated the consummation of the Acquisition.

120.    BAR has failed and refused to pay Plaintiffs any amount or portion of the Acquisition proceeds.

121.    BAR's above material omissions and false representations, which Plaintiffs relied on, constitute fraud and fraud in the inducement.

122.    Plaintiffs were substantially harmed and damaged by the fraud, whereas BAR (and Holdings) unjustly benefitted substantially.

123.    Plaintiffs are entitled to damages and other recoveries and relief, including equitable remedies, from and against BAR for its fraud

124.    BAR engaged in its fraudulent representations and omissions with actual awareness of the risk of substantial harm to Plaintiffs, but nonetheless proceeded anyway with conscious indifference to the rights of and extreme risk of harm to Plaintiffs. BAR also had specific intent to cause substantial harm or injury to Plaintiffs via its fraudulent representations and/or omissions. The harm suffered by Plaintiffs from Bar's fraud therefore resulted from malice and/or gross negligence on the part of BAR.

125.    Plaintiffs therefore seek and are entitled an award of exemplary damages for BAR's fraud and fraud in the inducement under Tex. Civ. Prac. & Rem. Code § 41.008, et seq.

29

## XI.
## COUNT 9: CONVERSION

126.    Plaintiffs restate and incorporate as if alleged herein the preceding paragraphs.

127.    Plaintiffs are the rightful owners of and have and have had the right to immediate possession of the Property. The Property constitutes $50,000 plus the number of Ondas shares that defendants BAR and Holdings calculated were allocable to Plaintiffs as a result of the Transaction and BAR's in kind election, after deduction of purported Acquisition transaction expenses.

128.    Bar and Holdings' calculations, which substantially shortchanges Plaintiffs, is not correct (and, on information and belief, is knowingly incorrect). The existence of a dispute about additional amounts owed, however, did and does not entitle BAR (or Holdings) to withhold the non-disputed portion, i.e., the Property, from Plaintiffs.

129.    BAR and Holdings are and have been aware of Plaintiffs' rights in and to the Property. Ondas and ARI also have been aware of Plaintiffs' rights in and to the Property or a substantial portion thereof.

130.    Plaintiffs made written demand on BAR and Holdings to tender and deliver the Property to Plaintiffs, but they have refused to comply. Written demand was made more than thirty (30) days before the filing of this suit.

131.    BAR and Holdings, by their above-alleged diversion and retention of the Property, have substantially interfered with Plaintiffs' rights to possession and use of the Property and have thereby converted Plaintiffs' Property. Ondas and ARI, by issuing the entirety of the 780,000 shares and $900,000 to Holdings, titling all such Ondas shares in Holdings' name, and not reserving or holding in trust an adequate portion of the shares and funds for Plaintiffs,

30

aided and abetted in and is jointly liable for the conversion.

132.    Defendants' conversion of Plaintiffs' Property has damaged Plaintiffs, and Plaintiffs are entitled to recover from Defendants all damages incurred.

133.    BAR and Holdings engaged in the conversion with actual awareness of the risk of substantial harm to Plaintiffs, but nonetheless proceeded anyway with conscious indifference to the rights of and extreme risk of harm to Plaintiffs. BAR and Holdings also had specific intent to cause substantial harm or injury to Plaintiffs via these acts as indicated above. The harm suffered by Plaintiffs from the conversion therefore resulted from malice and/or gross negligence on the part of BAR and Holdings.

134.    Plaintiffs therefore seek and are entitled an award of exemplary damages for Holdings and BAR's conversion under Tex. Civ. Prac. & Rem. Code § 41.008, et seq.

## XII.
## COUNT 10: MONEY HAD AND RECEIVED

135.    Plaintiffs restate and incorporate as if alleged herein the preceding paragraphs.

136.    Plaintiffs further invoke the equitable doctrine of unjust enrichment.

137.    Holdings received and is holding money and property – i.e., the Property – that in equity and good conscience belongs to the Plaintiffs.

138.    The holding and retention of Plaintiffs' Property has damaged Plaintiffs, and Plaintiffs are entitled to recover from Holdings all damages incurred.

139.    Holdings has been unjustly enriched by its holding and retention of Plaintiffs' Property. To prevent unjust enrichment, the Property and/or its maximum interim value should be divested from Holdings and awarded to Plaintiffs.

## XIII.
## COUNT 11: THEFT LIABILITY ACT

140.    Plaintiffs restate and incorporate as if alleged herein the preceding paragraphs.

141.    On the above-referenced allegations, BAR is liable to Plaintiffs for theft of services pursuant to the Texas Theft Liability Act, Tex. Civ. Prac. & Rem. Code § 134.001-.005.

142.    The theft has damaged Plaintiffs, and Plaintiffs are entitled to recover from Holdings and BAR all damages incurred, costs of court, attorney fees, and $1,000. Tex. Civ. Prac. & Rem. Code § 134.003 & .005.

## XIV.
## EXEMPLARY DAMAGES

143.    Plaintiffs incorporate as if alleged herein the preceding paragraphs.

144.    With respect to each above-alleged cause of action and as is alleged therein under each particular Court, respectively, the harm with respect to which Plaintiffs seek recovery of damages from Defendants resulted from Defendants' malice, fraud, and/or gross negligence. Defendants acted with specific intent to cause substantial harm to Plaintiffs and with conscious indifference to the rights of Plaintiffs despite awareness that their conduct involved an extreme degree of probable harm to Plaintiffs.

145.    Plaintiffs incurred economic and non-economic damages as a result of Defendants' wrongful conduct alleged herein.

146.    Plaintiffs seek and are entitled to recover exemplary damages from Defendants with respect to each cause of action for which such damages are appropriate, inclusive of the counts alleged herein. *See* Tex. Civ. Prac. & Rem. Code § 41.008.

147.    Because Defendants' above-alleged conduct meets the requirements of Tex. Civ. Prac. & Rem. Code § 41.008(c)(13), no § 41.008(b) cap applies to the exemplary damages

awardable to Plaintiffs from Defendants. *See* Tex. Civ. Prac. & Rem. Code § 41.008(c) (overriding § 41.008(b)'s exemplary damages cap of "two times the amount of economic damages; plus [ ] an amount equal to any noneconomic damages found by the jury, not to exceed $750,000").

## XV.
## CONSTRUCTIVE TRUST & EQUITABLE REMEDIES

148.    Plaintiffs incorporate as if alleged herein the preceding paragraphs.

149.    Defendants collectively and individually have been unjustly enriched by their actions, including by their wrongful retention, use, and leveraging of the Property, their redirection of the Acquisition consideration to Holdings, and the divesture to Ondas or ARI of the Ardenna Unit assets.

150.    Plaintiffs are entitled to the imposition equitable remedies against Defendants, including disgorgement, attachment, sequestration, constructive trusts, and an accounting.

151.    To protect Plaintiffs' interests, Defendants' actions necessitate the imposition of a constructive trust over: (a) the Property; (b) any and all proceeds and benefits derived by Defendants from the Property; (c) shares of Ondas Holdings, Inc. stock held or titled in Holding's or BAR's' name.

152.    To protect Plaintiffs' interests, the Court should additionally attach and order Defendants to place the assets identified in the preceding paragraph in the registry of the Court.

## XVI.
## INJUNCTIVE AND TEMPORARY RELIEF

153.    Plaintiffs incorporate as if alleged herein the preceding paragraphs.

154.    Plaintiffs are suffering immediate and irreparable injury as a result of Defendants' actions alleged above and Plaintiffs have no adequate remedy at law.

155.    Defendants wrongful acts will continue unless enjoined by this Court. Accordingly, Plaintiffs are entitled to temporary, preliminary, and permanent injunctive relief on all matters and claims alleged herein for which there is no adequate recovery at law.

156.    To prevent further immediate and irreparable harm, the Court should enjoin pending the conclusion of this case any use, transfer, sale, or encumbrance by the Defendants' of: (a) the Property; (b) any and all proceeds of or from the Property; and (c) shares of Ondas Holdings, Inc. stock held or titled in Holdings' or BAR's name.

## XVII.
## COST & ATTORNEY'S FEES

157.    Plaintiffs incorporate as if alleged herein the preceding paragraphs.

158.    Due to Defendants' above-alleged wrongful conduct and refusal to remedy the same, it has been necessary for Plaintiffs to obtain counsel and place this matter before this Court for resolution.

159.    Plaintiffs therefore are also entitled to recover their court costs and reasonable attorney fees. *E.g.*, Tex. Civ. Prac. & Rem. Code § 134.005; Tex. Civ. Prac. & Rem. Code § 37.001, et seq.; Tex. Civ. Prac. & Rem. Code § 38.001, et seq.

## XVIII.
## MISCELLANEOUS

160.    Election of Remedies: Nothing herein is intended as an election of remedies available to Plaintiff under law.

161.    Joint and Several Liability: Defendants, who materially assisted, aided and abetted, or conspired with one another as alleged in each respective Count above, are jointly and severally liable on the respective Courts for the herein alleged acts, claims, and damages.

162.    Nondischargeability: Plaintiffs' claims against Defendants and the recoveries

34

awardable thereon are premised upon intentionally malicious and fraudulent conduct by Defendants, and as such are not dischargeable in or by bankruptcy.

## XIX.
## <u>JURY DEMAND</u>

163.    Plaintiffs demand a jury trial on all issues so triable in this case.

## XX.
## <u>PRAYER</u>

For these reasons, Plaintiffs demand that Defendants appear and request judgment against them for the following:

(1)    All actual, statutory, economic, non-economic, exemplary, punitive, and enhanced damages, profits, proceeds, and other legally permissible damages or recoveries allowed by law, statute, or equity;

(2)    Specific performance;

(3)    Declaratory relief;

(4)    Temporary, interim, and permanent injunctive relief;

(5)    Imposition of constructive trusts, disgorgement, attachment, and other equitable remedies;

(6)    Pre-judgment and post-judgment interest on any award at the maximum legal rate;

(7)    Costs and attorney's fees as allowable by law, statute, or equity; and,

(8)    All other relief to which Plaintiffs may be entitled or as the Court may deem just, equitable, necessary, proper and/or appropriate under the circumstances.

Dated:  September 3, 2022         Respectfully submitted,

**LAW OFFICES OF CARL F. SCHWENKER**
The Parsons House
3807 Duval Street, Suite E
Austin, TX  78751
512.480.8427 – Telephone
512.857.1294 – Facsimile

*/s/ Carl F. Schwenker*
CARL F. SCHWENKER
Texas Bar No. 00788374
cfslaw@swbell.net

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that at approximately 10:09 a.m.on the 3nd day of September, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Andrew J. Mytelka
amytelka@greerherz.com
GREER, HERZ & ADAMS, L.L.P.
One Moody Plaza, 18th Floor
Galveston, Texas 77550