**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **SCALABLE INSIGHTS, LLC** and **DAVID PATTERSON** | § § § | |
| **Plaintiffs,** | § § | |
| **v.** | § § | **1:22-CV-700-LY-ML** |
| **BIHRLE APPLIED RESEARCH INC. BAR HOLDINGS, INC. f/k/a ARDENNA, INC., ONDAS HOLDINGS, INC., and AMERICAN ROBOTICS, INC.,** | § § § § § § | |
| **Defendants.** | § § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE:

Before the court is Defendants Bihrle Applied Reseaerch, Inc. ("BAR") and BAR Holdings, Inc. f/k/a Ardenna, Inc.'s ("Bar Holdings") (together, "BAR Defendants") motion to transfer (Dkt. #86) and all related briefing.[1] After reviewing the pleadings and the relevant case law, and determining that a hearing is not necessary, the undersigned submits the following Report and Recommendation to the District Court.

---

[1] The motions and related briefing have been referred to the undersigned by United States District Judge Lee Yeakel pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. Dkt. #49.

## I.    BACKGROUND

This dispute arose out of Plaintiff David Patterson ("Patterson") and Plaintiff Scalable Insights ("Scalable") (collectively "Plaintiffs") relationship with BAR. Scalable is Patterson's LLC. Plaintiffs and BAR entered into a contract, the Consulting Agreement, which provided that Patterson was to provide BAR with marketing and business development services for one of its units, the Ardenna Unit (now Bar Holdings). Dkt. #12-1 at 6, 12. The Consulting Agreement included a choice-of-law clause, a forum-selection clause ("Forum Selection Clause"), and a remedies clause. *Id.* at 9. Under the Consulting Agreement, Plaintiffs received a monthly fee and a transaction fee ("Transaction Fee") if contractually defined transactions occurred. *Id.* at 7–8.

In April 2022, BAR Defendants sold assets to Defendant Ondas Holdings ("Ondas") via an Asset Purchase Agreement ("APA"). Dkt. #24 at 16–17; Dkt. #70-1. Plaintiffs allege that BAR Defendants, Ondas, and American Robotics ("ARI") (together with Ondas, "Ondas Defendants") colluded to cut Plaintiffs out of the sale and to divert the Transaction Fee. *Id.* at 18. Plaintiffs contend that they are entitled to the Transaction Fee associated with the sale of assets to Ondas, specifically 23,695 shares of Ondas stock and cash. *Id.* at 17.

Plaintiffs filed a lawsuit in Texas state court, asserting multiple state law and federal claims. Dkt. #1-1 at 5–8. BAR Defendants removed and moved for dismissal or transfer. Dkt. #1 at 1; Dkt. #11 at 1.[2]

After noting that "this lawsuit is off the rails," *see* Dkt. #55, and being inundated with a multitude of motions, *see e.g.,* Dkts. #57, #58, #67, #69, #86, #82, the court ordered briefing or

---

[2] Federal question and diversity subject-matter jurisdiction exist in this case because Plaintiffs' Complaint raises a federal question and complete diversity exists between the parties with an amount in controversy in excess of $75,000. *See* 28 U.S.C. §§ 1331, 1332.

motions "on the sole issue of transfer pursuant to the forum selection clause in the agreement between Plaintiffs and the BAR Defendants." Dkt. #85. In compliance with court's order, BAR Defendants submitted this Motion to Transfer, which Ondas Defendants join.[3] Dkt. #87. Plaintiffs are opposed. Dkt. #86.

## II.   LEGAL STANDARD

Forum-selection clauses are "contractual provision[s] in which . . . parties establish the place (such as the country, state, or type of court) for specified litigation between them." *Forum-Selection Clause*, BLACK'S LAW DICTIONARY (11th ed. 2019). "[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*," *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013), which allows courts to "decline to exercise [their] jurisdiction and dismiss a case that is otherwise properly before [them] so that the case can be adjudicated in another forum." *PCL Civ. Constructors, Inc. v. Arch Ins. Co.*, 979 F.3d 1070, 1073 (5th Cir. 2020). "[F]or the subset of cases in which the transferee forum is within the federal court system," Congress codified the doctrine of *forum non conveniens* in 28 U.S.C. § 1404(a), "replac[ing] the traditional remedy of outright dismissal with transfer." *Atl. Marine*, 571 U.S. at 60. "[F]ederal law governs the enforceability of a forum selection clause, but the forum state's choice of law rules control what law governs the interpretation of the clause." *Wellogix, Inc. v. SAP Am., Inc.*, 648 F. App'x 398, 401 (5th Cir. 2016) (citing *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 770 (5th Cir. 2016)).

---

[3] The Ondas Defendants maintain that this court does not have personal jurisdiction over them. Dkts. #86, #57. However, "the Supreme Court explicitly held that 'a court need not resolve whether it has authority to adjudicate the cause (subject-matter jurisdiction) or personal jurisdiction over the defendant if it determines that, in any event, a foreign tribunal is plainly the more suitable arbiter of the merits of the case.'" *Wellogix, Inc. v. SAP Am., Inc.* 648 Fed. Appx. 398, 400 (quoting *Sinochem Int'l Co., Ltd. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007).

Section 1404(a) "permits transfer to any district where venue is also proper (i.e., 'where [the case] might have been brought') or to any other district to which the parties have agreed by contract or stipulation." *Atl. Marine*, 571 U.S. at 59 (quoting 28 U.S.C. § 1404(a)). "[A] proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Id.* at 59–60 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)) (cleaned up).

At the outset, a court must determine whether the forum-selection clause is part of a valid contract and whether the dispute falls within the scope of that contract. *Fintech Fund, F.L.P. v. Horne*, 836 F. App'x 215, 222 (5th Cir. 2020) (citing *Atl. Marine*, 571 U.S. at 62 n.5). A court must then analyze whether the forum-selection clause is mandatory or permissive. *Sabal Ltd. v. Deutsche Bank AG*, 209 F. Supp. 3d 907, 917 (W.D. Tex. 2016). After making these determinations, a court reaches the final preliminary inquiry and evaluates the enforceability of a forum-selection clause. *Weber*, 811 F.3d at 770.

"When the parties hold a valid forum selection clause, *Atlantic Marine* alters the normal section 1404 analysis." *In re Rolls Royce Corp.*, 775 F.3d 671, 678 (5th Cir. 2014); *Weber*, 811 F.3d at 767 ("The existence of a mandatory, enforceable [forum-selection clause] dramatically alters this analysis."). "First, the plaintiff's choice of forum 'merits no weight'; instead he has the burden of establishing that § 1404(a) transfer . . . is unwarranted." *Weber*, 811 F.3d at 767 (quoting *Atl. Marine*, 571 U.S. at 51[4]). "And second, the court should not consider the private-interest factors: Because the parties have contracted for a specific forum, they 'waive the right to challenge

---

[4] "[W]hen a plaintiff agrees by contract to bring suit only in a specified forum—presumably in exchange for other binding promises by the defendant—the plaintiff has effectively exercised its 'venue privilege' before a dispute arises. Only that initial choice deserves deference, and the plaintiff must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed." *Atl. Marine*, 571 U.S. at 63–64.

4

their preselected forum as inconvenient . . . .'" *Id.* (quoting *Atl. Marine*, 571 U.S. at 51). Thus, "a district court may consider arguments about public-interest factors only." *Atl. Marine*, 571 U.S. at 64. Public factors include, "the interest in having a case involving local disputes and local law resolved by a local court, [] facilitating judicial economy[,] and avoiding duplicitous litigation." *In re Rolls Royce Corp.*, 775 F.3d at 678; *see In re Volkswagen of Am., Inc.* 545 F.3d 304, 315 (5th Cir. 2008) ("The public interest factors are: '(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.'" (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). Because only the public-interests may weigh against transfer, and "[b]ecause those factors will rarely defeat a transfer motion, the practical result is that the forum-selection clauses should control except in unusual cases." *In re Rolls Royce*, 775 F.3d at 678 (quoting *Atl. Marine*, 571 U.S. at 51).

## III.   ANALYSIS

BAR Defendants, joined by Ondas Defendants, move to transfer based on the Consulting Agreement's Forum Selection Clause. Dkt. #86 at 1; Dkt. #87 at 1. Plaintiffs contend BAR Defendants are not entitled to rely on the Consulting Agreement and transfer is not proper because: (1) BAR assigned away its contractual rights to Ondas in the APA and no other Defendants are signatories to the Consulting Agreement; (2) the Eastern District of Virginia is not a proper transferee district because Ondas Defendants are not subject to its jurisdiction; (3) the Western District of Texas is an approved forum under the Consulting Agreement's forum-selection provisions because Plaintiffs seek injunctive and equitable relief; and (4) BAR Defendants did not include evidence of the traditional convenience factors in their Motion. Dkt. #88 at 2.

**A.  Preliminary Issues**

Two preliminary issues warrant discussion and disposal at the outset. First, Plaintiffs argue that this court should not transfer this lawsuit to the Eastern District of Virginia ("EDVa") because § 1404(a) does not permit transfer unless the action could have been brought in transferee district, arguing further that EDVa lacks personal jurisdiction over all Defendants. Dkt. #88 at 5 (citing cases).

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought *or to any district or division to which all parties have consented*." 28 U.S.C. § 1404(a) (emphases added). "Clearly parties can waive lack of personal jurisdiction." *Travelers Indem. Co. v. Calvert Fire Ins. Co.*, 798 F.2d 826, 834 (5th Cir. 1986). Indeed, "a defendant may waive its personal jurisdiction defense, thereby consenting to jurisdiction." *Adams v. Unione Mediterranea Di Sicurta*, 220 F.3d 659, 667 (5th Cir. 2000). "[A] defendant may waive personal jurisdiction if it authorized another to appear or act on its behalf in court." *Id.* at 667. "Personal jurisdiction . . . is 'a waivable right,' and a freely-negotiated forum-selection clause is sufficient to constitutionally establish personal jurisdiction." *Sealed Appellant 1 v. Sealed Appellee 1*, 625 F. App'x 628, 632 (5th Cir. 2015) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985)).

Here, BAR Defendants' Motion seeks enforcement of a forum-selection clause that provides that lawsuits must be brought in Virginia. Ondas Defendants joined the Motion. Dkt. #87 at 1. Accordingly, Defendants have consented to the personal jurisdiction and venue of EDVa.[5]

---

[5] Indeed, BAR Defendants Reply provides: "With the Ondas Defendants' joinder of the Motion (Doc. #87), all Defendants have effectively 'consented' to a transfer of venue to the Easter District of Virginia." Dkt. #90 at 2.

6

The second issue Plaintiffs raise that warrants disposal is that BAR Defendants may not enforce the Forum Selection Clause because they assigned their contract rights and the other Defendants may not enforce because they are not parties to the Consulting Agreement. Plaintiffs APA by which BAR Defendants sold the Ardenna Unit to Ondas Defendants, arguing that BAR "sold and assigned all rights of whatever kind . . . inclusive of forum selection." Dkt. #88 at 10 (cleaned up). Plaintiffs then cite a Fifth Circuit case that stands for the proposition that BAR Defendants "intentionally or voluntarily relinquished [their] rights." *Id.* at 10 (quoting *Wellogix*, 648 F. App'x at 401).

Defendants dispute Plaintiffs' interpretation of the APA but contend that whether Plaintiffs' interpretation of the APA's assignment clause is correct or not, it is effectively moot as all Defendants consent to transfer, including Ondas Defendants to whom BAR allegedly assigned its rights. Dkt. #90 at 4.

Defendants further argue, citing recent Fifth Circuit case law, that application of the "closely-related doctrine" is dispositive. *Id.* at 4 (citing *Franlink Inc. v. Bace Servs.*, 50 F.4th 432, 441 (5th Cir. 2022)). This court has pointed out that "[v]arious courts within the Fifth Circuit have found that a nonsignatory can enforce a forum-selection clause when 'the signatory's claims arise out of and relate directly to the written agreement.'" *Ney v. 3I Grp. PLC*, No. 1:20-CV-1142-LY-ML, 2021 U.S. Dist. LEXIS 256917, at *25 (W.D. Tex. 2021). "Pursuant to this doctrine, 'enforcement by a nonsignatory is permitted if the relationship between a nonsignatory and a signatory to the contract is close enough that the nonsignatory's enforcement of the forum-selection clause would be 'foreseeable' to the opposing party." *Id.* at *25 (citing cases) (cleaned up); *see Franlink*, 50 F.4th at 441. To determine whether parties are closely related and whether it is foreseeable that they will be bound, courts consider: "(1) common ownership between the

7

signatory and the non-signatory, (2) direct benefits obtained from the contract at issue, (3) knowledge of the agreement generally and (4) awareness of the forum selection clause particularly." *Franlink*, 50 F.4th at 442. The closely-related doctrine is context specific and determined by the significance of the relevant facts of a particular case. *Id.* at 442.

Here, the closely-related doctrine instructs that BAR Defendants may invoke the Forum Selection Clause. Whether or not BAR Defendants assigned their rights under the APA to Ondas Defendants, application of the *Franlink* factors establish that all Defendants are bound by the Forum Selection Clause. Plaintiffs' lawsuit arises out of the Consulting Agreement, which contains the Forum Selection Clause; BAR Defendants were parties to the Consulting Agreement; Plaintiffs seek to enforce the Consulting Agreement against BAR Defendants; Plaintiffs allege BAR Defendants assigned their rights to Ondas Defendants; all Defendants consent to transfer pursuant to the Forum Selection Clause. The foreseeability of enforcement of the Forum Selection Clause by any party to this action against any party to this action under these circumstances is undoubtable.

### B. Section 1404(a) Analysis

Plaintiffs argue that Defendants' Motion fails because the Motion illicitly relies on *Atlantic Marine*. Dkt. #88 at 9. Plaintiffs further argue that *Rolls Royce* governs, requiring a defendant-by-defendant severance-and-transfer inquiry. *Id.* at 9. Plaintiffs go on to point out that Defendants' Motion does not discuss private-convenience factors, arguing Defendants thereby fail meet the criteria for severance and transfer under *Rolls Royce. Id.* at 9–10. Defendants contend *Rolls Royce* is inapposite.

*Rolls Royce* does not apply to this case. Like this lawsuit, *Rolls Royce* was a multi-defendant action. *Rolls Royce*, 775 F.3d at 674. However, unlike this case, in *Rolls Royce*, only

one defendant sought transfer pursuant to a mandatory forum-selection clause. *Id.* at 674. Here, no severance-and-transfer inquiry is necessary because all Defendants support transfer. Accordingly, the court will proceed with the analysis required by *Atlantic Marine*.

### 1. Contract Validity

A court must determine whether the forum-selection clause is part of a valid contract and whether the dispute falls within the scope of that contract. *Fintech Fund*, 836 F. App'x at 222. Here, no party contests that the Forum Selection Clause is part of a valid contract. Plaintiffs seek to enforce provisions of the Consulting Agreement, and Defendants seek to enforce the forum-selection provision. *See e.g.,* Dkt. #24 at 19–22 (First Amended Complaint) *and see*, Dkt. #86 at 1 (Motion to Transfer). Accordingly, the court treats the Consulting Agreement as a valid contract.

Plaintiffs maintain that all of their claims are related to the Consulting Agreement. Dkt. #69 at 12; *see* Dkt. #76 at 11 n.23 (". . . all claims are closely related . . ."). Thus, this dispute arises out of the Consulting Agreement. Defendants seek to enforce the Forum Selection Clause, which governs disputes arising out of the Consulting Agreement. *See infra* at 9 (Forum Selection Clause). Thus, this dispute falls within the scope of the clause.

### 2. Mandatory or Permissive Forum-Selection Clause

The court must analyze whether the clause is mandatory or permissive. *Sabal*, 209 F. Supp. 3d at 917. The Forum Selection Clause provides:

> The Virginia state courts sited in Hampton, Virginia (or, if federal jurisdiction exists, the United States District Court for the Eastern District of Virginia—Newport News Division) **shall have exclusive jurisdiction and venue** over any dispute arising out of or relating to this Agreement, and the Parties hereby consent to the jurisdiction and venue of such courts.

Dkt. #12-1 at 9 (Consulting Agreement) (emphasis added).

9

"A mandatory FSC affirmatively requires that litigation arising from the contract be carried out in a given forum." *Weber*, 811 F3d at 768. "An FSC is mandatory only if it contains clear language specifying that litigation must occur in the specified forum—and language merely indicating that the courts of a particular place 'shall have jurisdiction' (or similar) is insufficient to make an FSC mandatory." *Id.* at 768. "[W]here venue is specified in a forum selection clause with mandatory or obligatory language, the clause will be enforced; where only jurisdiction is specified in a forum selection clause, the clause will generally not be enforced unless there is some further language indicating the parties' intent to make venue exclusive." *K & V Sci. Co. v. Bayerische Motoren Werke Aktiengesellschaft ("BMW")*, 314 F.3d 494, 499 (10th Cir. 2002). [6]

Because the Forum Selection Clause's language provides that Virginia court "shall have *exclusive* jurisdiction *and* venue," the clause is mandatory.

### 3. Enforceability

After determining that a forum-selection clause is part of and within the scope of a valid contract and that it is mandatory, courts evaluate the enforceability of a forum-selection clause. *Weber*, 811 F.3d at 770. And the normal section 1404 analysis is dramatically altered. *Id.* at 767. The plaintiff's choice of forum merits no weight, and the court should not consider private-interest factors. *Id.* at 767.

Plaintiffs correctly point out that only they address private-interest factors. Dkt. #88 at 10. However, "the court should not consider the private-interest factors." *Atl. Marine*, 571 U.S. at 574; *Rolls Royce*, 775 F.3d at 679.

---

[6] In *Weber*, the Fifth Circuit cites to *K & V Sci. Co.* as authority on how a majority of circuits determine whether a forum-selection clause is mandatory or permissive. *Weber*, 811 F.3d at 768 n.14 (citing 314 F.3d 494, 499 (10th Cir. 2002)).

Defendants address the public-interest factors, contending that transfer to EDVa will help to achieve judicial economy because it is where the parties have consented to venue and will avoid severance. Dkt. #90 at 3. Public-interest "factors will rarely defeat a transfer motion, [thus] the practical result is that the forum-selection clauses should control except in unusual cases." *Atl. Marine*, 571 U.S. at 64. That is the result here, where the public-interest factors weigh in favor of transfer. Accordingly, the Forum Selection Clause is enforceable.

## IV.   CONCLUSION

The interest of justice in this case is served by holding parties to their bargain, that is, to subject themselves to the jurisdiction of the courts in Virginia.[7] Put simply, Plaintiffs should comply with the Forum Selection Clause in the contract they are seeking to enforce.

## V.   RECOMMENDATIONS

For the reasons given above, the undersigned **RECOMMENDS** that Defendants Motion to Transfer (Dkt. #86) be **GRANTED** and Plaintiffs' lawsuit, pursuant to the enforceable forum-selection clause, be transferred to the U.S. District Court for the Eastern District of Virginia–Newport News Division.

Because the undersigned recommends transferring this lawsuit to the Eastern District of Virginia, the undersigned **FURTHER RECOMMENDS** that all pending motions be **DISMISSED without prejudice**.

In light of this recommendation, the referral to the magistrate should be ended.

---

[7] Plaintiffs offer a truncated argument that this District is a valid forum under the Consulting Agreement's forum-selection provisions because a separate clause provides that a party may "seek injunctive or other equitable or provisional relief in any court of competent jurisdiction." Dkt. #88 at 10–11. Plaintiffs seek *inter alia* injunctive and equitable relief. However, Plaintiffs present no argument as to why EDVa is not a court of competent jurisdiction or cannot grant them the relief they seek. Judicial economy and principles of justice counsel giving Plaintiffs their day in court pursuant to the contract they are seeking to enforce.

## VI.   OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

SIGNED April 13, 2023.

_____
Mark Lane
United States Magistrate Judge